PENOBSCOT TRIBE OF INDIANS *vs.* JONES P. VEAZIE & another.

*Exception in a deed—construction of. Government title superior to that of aborigines. In real action plaintiff must recover on strength of his own title.*

In a deed from the Penobscot Indians, to the Commonwealth of Massachusetts, releasing all right, title, and interest to the lands lying on each side of the Penobscot river, commencing at Nichols Rock and extending up the river thirty miles, was the following clause: " Excepting and reserving to the said tribe all the islands in said river above Oldtown, including said Oldtown Island, within the limits of the said thirty miles," *Held,* that five islands lying along side of Oldtown Island, were not embraced within the exception.

The title of the government is superior to that of the aborigines.

Where the State conveyed land to the grantor of the defendants' ancestor, more than thirty years ago, and the defendants, and those under whom they claim, have held the possession and claimed to be the owners of the land during all that time, it is not competent for a tribe of Indians, who do not appear to have any title to the premises, to question the regularity of the sale by the State.

ON REPORT.

WRIT OF ENTRY, brought in pursuance of a special resolve of the legislature of Maine, approved Feb. 5, 1868, to recover five small islands in Penobscot river, known as " Grassy Islands," lying above the Indian village, on the lower end of Oldtown Island, called Oldtown, and not above but alongside the island called Oldtown Island.

Plea, general issue and statute of limitations.

The plaintiffs put into the case a treaty dated Aug. 8, 1796, between " William Shepard, Nathan Dane, and Daniel Davis, commissioners, duly appointed and fully authorized and empowered by the Commonwealth of Massachusetts, to treat and stipulate with the Penobscot tribe of Indians, respecting lands they claim on Penobsot river, on the one part, and Orono, Opsang, Nicketumbarvit, Joseph Peace, Wyarsomeeggasett, and Sebattis Neptune, chief of the said tribe, for themselves and for their said tribe," wherein

it is stipulated that, " in consideration of the immediate and annual payment " of the articles therein named, the said chiefs for themselves and tribe " do grant, release, relinquish, and quitclaim to the said Commonwealth, the said tribe's right, interest, and claim to all the lands on both sides of the River Penobscot, beginning near Colonel Jonathan Eddy's dwelling-house, at Nichols Rock, so called, and extending up the said river thirty miles in a direct line, according to the general course of said river, on each side thereof, excepting, however, and reserving to the said tribe all the islands in said river, above Oldtown, including said Oldtown Island, within the limits of the said thirty miles."

Also deed from the same tribe by their said chiefs to the Commonwealth of Massachusetts, of the same date and tenor.

Plaintiff put in the following resolves:

*Resolved,* That the governor of the Penobscot tribe of Indians, the principal chiefs and a majority of said tribe, under the advice of their agent, be and hereby are authorized to sell a certain island in Penobscot river, called Smith's Island, situated above and near Oldtown Falls, so called, and containing about one acre and a half of land, to Nathan Winslow ; and the deed of the governor and principal chiefs of said tribe of Indians, conveying said island to said Winslow, when approved and countersigned by the land-agent of this State, shall be considered and held as evidence of a good title to the fee of said island in all judicial courts within and for this State ; and the consideration-money for the purchase of said island shall be paid to the Indian agent, to be appropriated to the use of said Indians as the governor and council shall direct.

Approved Feb. 27, 1829.

*Resolved,* That the land-agent of this State, jointly with the land-agent of Massachusetts, be, and he is hereby authorized and empowered to sell and convey by deeds of quitclaim, all such small tracts or gores of land in this State, as may remain the undivided property of said States, from time to time, as they shall come to his knowledge, for the benefit of said States.

Approved March 3, 1829.

Also, the following resolution, passed by the legislature of Massachusetts :

*Resolved,* That the land-agent of this Commonwealth, conjointly with the land-agent of the State of Maine, be, and he is hereby authorized and empowered to sell and convey by deeds of quitclaim all such small tracts or gores of land in the State of Maine, from time to time as they shall come to his knowledge, for the benefit of the two States of Massachusetts and Maine. Provided it appears evident the same are owned by said States.

· Approved Feb. 18, 1829.

A deed of the premises in controversy from the land-agents of Maine and Massachusetts, to Nathaniel Lord, dated June 20, 1837, duly recorded.

A deed, dated Jan. 15, 1839, and duly recorded, from Lord to Samuel Veazie of the same premises.

It appeared that Samuel Veazie died March 12, 1868, and that the defendants are his heirs at law ; that when the treaty and deed were executed, that the present town of Oldtown and Orono were unincorporated, the whole territory comprising them being then known as Stillwater Plantation.

It also appeared that the defendants, and those under whom they claimed, had continued to occupy the premises under their deed, as their own, openly, adversely, and peaceably from the date of the deed to Lord.

It appeared, on the part of the plaintiffs, that the land-agent, by virtue of Public Laws of 1835, c. 158, surveyed these islands, and on his plan, recorded in the land-office, marked these islands as the property of the plaintiffs.

The case was referred to the full court to render such judgment as the rights of the parties required.

*T. B. Reed,* attorney-general, for the plaintiffs.

That the resolves of February 18, and March 3, 1829, did not contemplate the islands in controversy, is evident from the resolve of February 27th. Hence if the States owned the islands in com-

mon, the resolves conferred no authority on the land-agents to sell, and their deed is void. Story on Agency, § 126; 2 Kent's Com. 620 *et seq.*

There is no evidence that the islands were owned in common by the States; and if they were not, the sale was not within the authority conferred.

The islands were reserved in the deed and treaty. They lie above Oldtown, but not above Oldtown Island. The word " said " qualifies Oldtown and not Oldtown Island. Having named Oldtown, and wishing to clear up any doubt to the island on which Oldtown is situated, the exception included " said Oldtown Island." The construction is recognized in the Public Laws of 1835, c. 158, and in the plan made under it.

The plan, whether considered as the work of a public officer or as a public record, makes out a *prima facie* case, and, being uncontradicted, it must prevail. *Bruce* v. *Holden,* 21 Pick. 189; *Kendall* v. *White,* 13 Maine, 245; 1 Greenl. on Ev., § 491.

No title, having been conveyed by the State, it is either in the State or tribe. The resolve under which this action is brought admits it to be in the tribe.

Independent of rights conferred by the State, the plaintiffs have always had the title, and never parted with it.

The title of the Indians to the soil is subject to the limitation only, that no one except the State can buy of them. *Worcester* v. *Georgia,* 6 Pet. 214; *Mitchell* v. *U. S.,* 9 Pet. 745, 746; *Jackson* v. *Wood,* 7 Johns. 295; *Goodell* v. *Jackson,* 20 Johns. 693.

This right has been recognized in Maine and Massachusetts not only by the treaties, but by statute 13 William III. (1701), cited in *Brown* v. *Wareham,* 10 Met. 49; Colony Laws (1623), § 1; An. Chart. and Laws, c. 58, p. 132; Acts and Resolves of Prov. of Mass. Bay, 471, 472, 301.

Prescription applies only to incorporal hereditaments. *Cortelyon* v. *Van Brunt,* 2 Johns. 362.

The plaintiffs never, hitherto, having had any right to appear, cannot be concluded by adverse possession. *Nelson* v. *Butterfield,*

21 Maine, 220, 235, 237, and cases cited; *Barker* v. *Richardson*, 2 B. & A. 579.

The statute of limitations is purely a question of remedy, and is within the control of the legislature, which can enlarge the time within which a suit may be brought. *Carnegie* v. *Morrison*, 2 Met. 381; *Bulger* v. *Roche*, 11 Pick. 36; *Bridgham* v. *Bigelow*, 12 Met. 273.

*A. W. Paine*, for the defendants.

WALTON, J. This is a real action in which the Penobscot tribe of Indians claim to recover possession of five small islands lying in the Penobscot river, near Oldtown. The action is authorized by a resolve of the legislature, and is prosecuted by the attorney-general for the benefit of the plaintiffs.

It appears that in 1796 the Penobscot Indians released to the Commonwealth of Massachusetts all their right, title, and interest to the lands lying on each side of the Penobscot river, commencing at Nichols Rock, so called, near Colonel Jonathan Eddy's dwelling-house, and extending up the river thirty miles. The deed contains the following reservation :

" Excepting, however, and reserving to the said tribe all the sl ands in said river, above Oldtown, including said Oldtown Island, within the limits of the said thirty miles."

The plaintiffs claim that the islands sued for are included in the foregoing reservation. If this were true, it would by no means follow that they are entitled to recover. The statute of limitations would still have to be overcome; for the defendants, and those under whom they claim, have been in the actual possession of the premises, under a grant from the State, for more than thirty years. They would also have to overcome the objection that the courts have always held, that a title derived from the government is superior to one derived from the aborigines; and that if it should now be held otherwise, and it should also be held that the statute of limitations is no bar to a recovery under an Indian title, a door

would be opened to endless litigation, and thousands of titles, now considered perfectly secure, would be instantly destroyed.

The fact must not be overlooked, that the reservation referred to did not create in the Indians any new title,—did not operate as a grant to them of the islands therein described. Its effect was simply to leave in them the title which they before had, and no more. It is clear, therefore, that if the plaintiffs prevail, it must be upon the ground that the title of the aborigines of this country to the wild lands over which they roamed is superior to that of the government. The executive and legislative departments of the government have generally treated with the Indians as if they were the owners of those vast territories. But when the title to any particular tract of land has been called in question, in the courts of justice, no such doctrine has been admitted. The courts have uniformly held that the title of the government is superior to that of the aborigines. 3 Kent's Com. Lect, 51, and authorities there cited.

But the defendants do not rely wholly upon these grounds of defense. They deny that the islands sued for are included in the reservation referred to. They do not deny that " all the islands in said river, above Oldtown, including Oldtown Island," were reserved; for such is the very language of the deed. But they deny that the five small islands sued for, which lie alongside of Oldtown Island, were reserved; and we think they are right. Certainly they are not a part of Oldtown Island, nor are they above it. How, then, can it be claimed that they are included in the above reservation? We think it cannot. We think that whatever title the Penobscot Indians had to those islands was conveyed to the Commonwealth of Massachusetts in 1796, and that these plaintiffs now have no shadow of title. The defendants, on the contrary, are in possession under a conveyance from the land-agents of Maine and Massachusetts. The land-agents conveyed to Nathaniel Lord in 1837; Lord conveyed to Samuel Veazie in 1839; Veazie died in 1868, and the defendants are his heirs.

It is suggested, however, that the land-agents, in making the conveyance to Lord in 1837, may have exceeded their authority.

We have not deemed it necessary to scrutinize very carefully the resolves under which they acted in making the sale, to see whether they exceeded their authority or not; for it is a familiar rule of law, that, in real actions, the plaintiff must recover, if he recover at all, upon the strength of his own title and not the weakness of his adversary's. It is clear that the plaintiffs have no title to stand upon. It is not necessary, therefore, to scrutinize very closely the regularity of the sale under which the defendants claim. The State received two hundred and fifty dollars for less than four acres of land, and, so far as appears, there has never been any attempt to rescind the sale. The State has kept the money for upwards of thirty years, without offering to restore it; and the defendants, and those under whom they claim, have held the possession and claimed to be the owners of the land during all that time. We think it is not competent for these plaintiffs, who do not appear to possess a scintilla of title, to question the regularity of the sale.

*Judgment for defendants.*

APPLETON, C. J.; CUTTING, DICKERSON, and DANFORTH, JJ., concurred.